(No. 87-CC-0738—)

RICHARD F. PATTON, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 25, 1994.*

SUSAN SHATZ, for Claimant.

ROLAND W. BURRIS, Attorney General (THOMAS L. CIECKO, Assistant Attorney General of counsel), for Respondent.

## OPINION

SOMMER, C.J.

Claimant asserts that the Department of Corrections (hereinafter "IDOC") damaged him by "negligently keeping him in confinement * * * from September 9 [*sic*], 1984, when he [allegedly] should have been released, until November 18, 1985, when he was actually released." (Complaint, par.1.) Claimant had been separately convicted in Mississippi and Illinois for two unrelated crimes of manslaughter, receiving a 20-year sentence in Mississippi in 1980 and a 5-year sentence in Illinois in 1984. Of the potential combined 25-year prison sentences, he ultimately served a total of 5 years, 8 months and 4 days (3/14/80-11/18/85), and a significant portion of that time (approximately 2½ years) consisted of credit given for prior time spent in county jails awaiting trial and sentencing. Claimant's actual confinement in *prisons* was slightly over 3 years and 2 months on the combined 25-year sentences.

The following timeline documents significant events crucial to this claim. It is drawn from the objective facts contained in the exhibits which the parties tendered into evidence:

| | |
|---|---|
| 8/20/80 | Mississippi sentence of 20 years for manslaughter, retroactively served to 3/14/80 due to jail time. Mississippi Department of Corrections (hereinafter "MDOC") computes maximum discharge date as 3/14/2000. |
| 3/8/82 | Transferred by MDOC to custody of Cook County sheriff for Illinois trial. |
| 3/10/82 | Enters Cook County jail. This information is not received by IDOC until 11/18/85, same date that sentence was recomputed resulting in Claimant's immediate release. |
| 2/27/84 | Sentenced by Cook County circuit court to IDOC for 5 years for manslaughter: |

- credit to be given for Illinois jail time served;
- sheriff of Cook County to deliver Claimant to IDOC; and
- IDOC to confine Claimant "until the above sentence is fulfilled."

| | |
|---|---|
| 3/5/84 | Claimant supposed to be returned to custody of MDOC by Cook County sheriff. However, Claimant actually remains in Cook County custody until 4/3/84. This information is not received by IDOC until 11/18/85, same date that Claimant's sentence was recomputed resulting in immediate release. |
| 3/13/84 | IDOC sentence calculation worksheet, based on 2/27/84 sentence date, shows: |

- projected out date of 8/27/86 (2½ years); and
- mandatory out date of 2/27/89 (5 years).

However, Claimant at this point has not entered IDOC custody inasmuch as the Cook

County sheriff directly returned Claimant to MDOC.

9/10/84 This is date IDOC later determines would have been "correct" projected out date based on Cook County jail credit, but information to compute it is not made available to IDOC by Cook County until 11/18/85, same date that Claimant's sentence was recomputed resulting in immediate release.

9/25/84 Mississippi parole board denies Claimant parole on his Mississippi conviction because it is "not in best interest[s] of society" and continues matter for review in one year. As of 10/1/84, MDOC shows projected discharge date of 4/9/96 based on credits allowed.

8/26/85 Taking up above one-year continuance, Mississippi parole board now finds eligibility for parole and orders Claimant's return to Illinois and release from Mississippi custody on 10/16/85. Time served since 3/14/80 (including Illinois jail time) is 5 years, 7 months, and 2 days on original 20-year Mississippi sentence.

10/17/85 Cook County sheriff takes custody of Claimant from MDOC and returns Claimant to Illinois.

10/18/85 Cook County transfers custody of Claimant to IDOC at Joliet. This is the point that Claimant first entered IDOC custody.

11/2/85 Claimant is transferred to Vandalia.

11/8/85 IDOC writes Cook County asking for amount of Claimant's jail credit.

11/18/85 Cook County answers 11/8/85 inquiry and shows custody from 3/10/82-4/3/84 (2 years, 24 days).

11/18/85 New IDOC sentence calculation worksheet is prepared and shows:

- custody date of 3/10/82 (date Cook County had initially taken custody from MDOC);
- projected out date of 9/10/84 (2½ years); and
- mandatory out date of 3/10/87 (5 years).

11/18/85 Claimant immediately released from IDOC custody. 33 days have elapsed since prior MDOC release.

Claimant asserts that, by reason of Respondent's allegedly erroneous initial computation of his Illinois good time "out date," he was denied parole by Mississippi on September 25, 1984, and was unlawfully incarcerated from that point until his eventual November 18, 1985, Illinois release.

Claimant alternately refers to his claim as negligent confinement or unlawful incarceration, but the applicable tort theory, quite simply, is false imprisonment. Numerous Illinois decisions have addressed the basic elements of such a claim. (See, *e.g., Meerbrey v. Marshall Field & Co., Inc.* (1990), 139 Ill. 2d 455, 474, 564 N.E.2d 1222, 1231 and *Hajawii v. Venture Stores, Inc.* (1984), 125 Ill. App. 3d 22, 25, 465 N.E.2d 573, 576 (1st Dist.).) These cases involve the frequent situation where a merchant's security officers detain a customer or employee on suspicion of shoplifting. However, the theory has also been utilized where law enforcement personnel arrest an individual for the commission of a crime. (See, *e.g., Fort v. Smith* (1980), 85 Ill. App. 3d 479, 481 and 484, 407 N.E.2d 117, 119 and 121 (5th Dist.) and *Sparling v. City of LaSalle* (1980), 83 Ill. App. 3d 125, 126, 403 N.E.2d 769, 770 (3d Dist.).) Although Claimant has not pleaded

the specific elements of his particular claim, they can be readily distilled from the above case law:

(1) Respondent caused Claimant's alleged extended prison confinement;

(2) The extended confinement was against Claimant's will; and

(3) Respondent acted intentionally and without having reasonable grounds to believe that Claimant should be further confined.

(See also, Illinois Forms of Jury Instruction, sec. 42.31, *Matthew Bender & Co., Inc.*, 1993.) Those are the allegations that should have been (but were not) pleaded by Claimant. For purposes of this opinion, it will be assumed, *arguendo*, that at all times the confinement was against Claimant's will. Thus, this claim must stand or fall based on application of the evidence to the first and third elements of the tort.

Element One—Causal Connection: Did Respondent Cause Claimant's Alleged Extended Confinement?

The February 27, 1984, sentencing order from Cook County circuit court directed Respondent to "take [Claimant] into custody and confine him in the manner provided by law until the above [5-year] sentence is fulfilled." While the order also provided that Claimant was to be given credit for time which he had served in the Cook County jail awaiting trial and sentencing, the order did not quantify that credit nor did it specify either the minimum projected "out date" or the mandatory "out date." The order was silent in terms of the data needed for Respondent to perform those specific computations.

The Unified Code of Corrections imposes on the county sheriff and circuit clerk the duties of assembling that data and transmitting it to Respondent. Section 5—

4—1(e)(4) requires the sheriff to provide the information to the circuit clerk, who in turn is to then transmit it to Respondent. (730 ILCS 5/5—4—1(e)(4).) Section 3—8—1(a) imposes a separate duty on the sheriff to independently transmit that data to Respondent. (730 ILCS 5/3—8—1(a).) Thus, if all had operated according to the statutory scheme, Respondent would have received the jail credit data here twice, once from the circuit clerk and once again from the sheriff. However, the record is silent on both accounts; there is no evidence to prove that either transmission occurred. Rather, the state of the evidence is that this critical data was first received by Respondent on November 18, 1985, the same date that Respondent recalculated the sentence and immediately released Claimant.

Accordingly, Claimant has failed to establish causal connection against Respondent for his alleged extended prison confinement. The unrefuted evidence demonstrates that Respondent had accurately computed both the minimum projected "out date" (8/27/86) and the mandatory "out date" (2/27/89) based on the information which it actually possessed. At most, Claimant's alleged confinement beyond the adjusted minimum projected "out date" of September 10, 1984, resulted from the failure of the sheriff and circuit clerk to timely transmit that data to Respondent. But even part of that conclusion is speculative, for it cannot be said with any certainty that Mississippi would have paroled Claimant in 1984 but for the allegedly erroneous Illinois data. Claimant has not tendered into evidence a transcript or other report of proceedings from his September 25, 1984, Mississippi parole hearing. As of that hearing, Mississippi's sentence computation record showed a projected early release date of July 8, 1996, based on accumulated good behavior credits. All that can be gleaned from the record is that with almost 12 years then remaining on his Mississippi sentence, the Mississippi parole

board unilaterally believed it not in the best interest of society to release Claimant at that time. The reasons supporting its decision are not articulated in the record, and Claimant's self-serving explanation must be disregarded as untrustworthy hearsay. From all that can be determined from this record, the Illinois detainer played no role in the 1984 Mississippi parole denial. All that can be concluded with certainty is that Claimant's continued 33 days in custody after October 16, 1985 (Mississippi parole date), through and including his release on November 18, 1985, had resulted from the failure of the Cook County sheriff and Cook County circuit clerk to timely transmit the jail credit data to Respondent. Respondent itself did not in any manner cause Claimant's alleged extended prison confinement.

Element Three—Scienter: Did Respondent Act Intentionally and Without Having Reasonable Grounds to Believe that Claimant Should Be Confined?

Claimant entered Respondent's custody on October 18, 1985, after the Cook County sheriff brought him back the second time from Mississippi. At all relevant times prior to that point, Claimant had been in the custody of only the Mississippi Department of Corrections or the Cook County sheriff. Section 3—2—2(h) of the Unified Code of Corrections gives Respondent the power to investigate its prisoners' grievances. (730 ILCS 5/3—2—2(h).) Pursuant to that power, Respondent has established an Office of Advocacy Services and has adopted specific grievance procedures for inmates to follow. (See 20 Illinois Administrative Code, ch. I, section 440.20 and sections 504.800 through 504.870.) As best can be gathered from the record, Respondent did not require Claimant to adhere to the formal grievance procedures in this instance but instead voluntarily took it upon itself to contact the

Cook County sheriff to assemble the jail credit data. When the sheriff answered on November 18, 1985, Respondent prepared a new sentence calculation worksheet, saw the September 10, 1984, projected "out date," and immediately released Claimant. In total, Claimant spent only 32 days in Respondent's custody, and that period resulted from Respondent having to compel the sheriff to comply with his statutory duties to assemble the pertinent jail credit data. Given the magnitude of both Respondent's operations and the sheriff's jail operations and given the serious nature of Claimant's conviction, that 32-day wait can hardly be unreasonable. Accordingly, Respondent had reasonable grounds to believe that Claimant should be confined, promptly investigated and acted upon Claimant's grievance, and had no intent to confine Claimant beyond his sentence.

Additional Affirmative Matter Apparent from the Record

The irony of this claim is that the supposedly "correct" November 18, 1985, sentence calculation worksheet was erroneous and that Claimant was *prematurely* released by Respondent. Claimant's projected "out date" was based on half of his sentence, 2½ years. That would be the equivalent of 912 days in prison. As a matter of law, a convict is not entitled to credit for time spent in custody while incarcerated in another state as the result of a crime committed there, even if a detainer is served on the convict in that state. (*People v. Gardner* (1988), 172 Ill. App. 3d 763, 768, 527 N.E.2d 155, 158 (3d Dist.); *People v. Roberts* (1977), 47 Ill. App. 3d 524, 528, 362 N.E.2d 106, 109 (4th Dist.):

"[I]t would thwart the plain meaning of [the statute] to give a defendant credit for being 'in custody' for his confinement on the [out-of-state] charge since such was not 'a result of the offense for which the sentence was imposed' [citations omitted]. We believe that since defendant's confinement [out-of-state] was on a wholly unrelated charge, to give him credit for time served there while the Illinois detainer was pending would be giving him a

windfall not intended by the statute." *People v. Roberts*, 47 Ill. App. 3d at 528, 362 NE.2d at 109.

In other words, the period which Claimant spent in Mississippi between April 4, 1984, and October 16, 1985, inclusive (1 year, 6 months, 12 days) should *not* have been applied as a credit against his Illinois sentence, for it was time spent in custody for the original Mississippi crime. A review of the record reveals that Claimant had only accrued 759 days of credit on his Illinois sentence at the point that Respondent received custody on October 18, 1985:

| | | |
|---|---|---|
| 1982 (3/10-12/31) | = | 299 days |
| 1983 (1/1-12/31) | = | 365 days |
| 1984 (1/1-4/3) | = | 94 days (leap year) |
| 1985 (10/17) | = | 1 day |

759 days TOTAL

Thus, at the point that he entered Respondent's custody, Claimant had an additional 153 days remaining on his Illinois sentence before he would be eligible for early release. The correct projected "out date" should have been March 19, 1986. Respondent's November 18, 1985, release was 121 days too soon.

Accordingly, Respondent was indeed negligent, but not as Claimant would have this Court believe. In its haste to process Claimant's grievance, Respondent erroneously recomputed Claimant's projected "out date" and released him from prison approximately 4 months before he would have been entitled to be released. Far from harming Claimant, Respondent gave him a windfall. Lacking any basis in either law or fact, it is therefore ordered that this claim is denied.